## Petition of PORTLAND ELECTRIC POWER CO.

### No. B–23986.

### No. 923.

United States District Court,
D. Oregon.
June 5, 1944.

See also D.C., 97 F.Supp. 857.

Clarence D. Phillips, Portland, Or., for debtor.

Ralph H. King, Portland, Or. for independent trustees of debtor.

Frederick M. DeNeffe, Paul E. Kern, Portland, Or., for Bondholders Committee.

W. Stevens Tucker, San Francisco, Cal., for Securities & Exchange Commission.

Charles A. Hart, Portland, Or., Edgar G. Crossman and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co.

Justin N. Reinhardt, Portland, Or., for First Preferred Stockholders.

MacCormac Snow, Harry Beckett, Robert T. Mautz and V. Lyle McCroskey, Portland, Or., for Prior Preference Stockholders.

JAMES ALGER FEE, Chief Judge.

This is a petition for an order confirming the report of Estes Snedecor, Special Master, on application of the Independent Trustees and the attorney of the Portland Electric Power Company for interim allowances on account of services performed during the months of January, February and March, 1944, and for the approval of certain expenses. The report is based upon an extensive hearing at which the trustees and the attorney testified and certain stockholders appeared and asked questions and made observations. The report recommended payment of the expenses and the payment of the interim allowances at the rate which has been established over a period of years. The Court has made a careful study of the record and of the testimony, although no objection has been filed to the report.

The interim allowances were established in 1940. Although the petitions in each instance are for a larger figure, the Court agreed with the recommendation of the Securities and Exchange Commission that the present allowances should be set up. The Independent Trustees do not actually control the operating companies who are under control of the Trustee for the bondholders. This circumstance only increases the responsibility of the Independent Trustees and their attorney, because, although they do not technically initiate policies, they must nevertheless suggest action to the company and take steps to prevent improper measures from being carried out. A great deal of litigation is presently being carried on which may or may not benefit the stockholders. But this is a necessity to dispose of the transactions which still clog the operation of the debtor and the liquidation of its obligations.

The litigation which was initiated by the Public Utilities Commissioner of Oregon concerning the rates of Portland General Electric Company is a conspicuous example of the type situation with which the Independent Trustees and their attorney must deal.

This situation was handled with rare ability and sound judgment upon the part of all these officers. Although the final solution is not their responsibility, it is obvious that they prevented, by prompt action, matters which might have been of serious detriment to the companies and to the stockholders and bondholders thereof, if not to the public in addition. The vast field of the activities of the Independent Trustees and their attorney is reflected in this report which shows that these matters are all handled with conspicuous capacity.

The comments of the Special Master in Paragraph 8 of his report are fully borne out by the record and justified thereby. These comments are: "The files in office of the clerk of the court do not disclose the receipt of any written objections to interim allowances since the date of the hearing on February 14, 1944. About nine stockholders appeared at the hearing. Some voiced objections to the requested allowances, while others expressed approval and commended Mr. King and the independent trustees for the things they are seeking to accomplish. From the tone of the objections it is apparent that the stockholders have no comprehension of the difficulties and extent of the litigation being waged by the independent trustees and their counsel to recover some of the millions of dollars lost many years before the institution of the reorganization proceedings. Nor do they have any comprehension of the legal obstacles to be overcome in formulating a plan in which the stockholders may have any substantial participation. The debtor and its subsidiaries have prospered during the reorganization proceedings. While this prosperity may be due in a large measure to war conditions, the trustees have been instrumental in effecting savings each year of an amount many times larger than the total expense of the reorganization expenses. The improved financial position of the debtor is indicated by the fact that the debtor's cash on hand has increased since the filing of the reorganization proceedings from $104,790.80 to $381,457.48, as of March 31, 1944. This is after the payment of all reorganization expenses to date, all railroad retirement and property taxes, expenses of rehabilitation of interurban railway tracks at a cost of over $80,000.00, and the purchase price of eight additional interurban cars. A corresponding improvement is reflected in the financial condition of the debtor's two subsidiaries, Portland General Electric Company and Portland Traction Company."

The interim allowances have been fully earned and the question is reserved as to how much more should be paid to compensate these officers for the services indicated by their respective reports.

The report of the Special Master is approved in all respects and the order confirming the same is placed on file.